## Case No. 11,832.

### RIGGS v. TAYLOE.

[2 Cranch, C. C. 687.] [1]

Circuit Court, District of Columbia. May Term, 1826. [2]

EVIDENCE—WRITTEN CONTRACT—SECONDARY EVIDENCE—PRELIMINARY CONVERSATIONS—PLEADING—MONEY HAD AND RECEIVED—TRIAL.

1. If a written contract be not lost nor destroyed. but only "mislaid," secondary evidence will not be admitted. although the party makes oath that "he has searched for it among his papers repeatedly and cannot find it."

2. Upon a second trial, the court will not permit improper evidence. if objected to, to be given. although it had been received at the first trial without objection.

3. Testimony of conversations, preliminary to a written unconditional contract, is admissible and competent on a count upon a written conditional contract which is lost, destroyed. or mislaid. although the witness does not recollect the terms of the written contract, nor how it was expressed, but states his impression and belief.

4. Money paid upon an uncertain contingency, which both the payer and payee expected would happen, but which did not happen, may be recovered in an action for money had and received.

5. If the contract be to purchase the defendant's bank stock at par, with so much of the

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reversed in 1 Pet. (26 U. S.) 591.]

next dividend as was then supposed to have been earned, estimated at three per cent., and it turns out that nothing was earned, there is an implied assumpsit, on the part of the defendant, to refund the three per cent.; and so much of the contract as relates to the advance of three per cent. is executory, even after the purchase money has been paid.

Assumpsit [by Elisha Riggs against John Tayloe], upon a special written contract; and for money had and received.

In the first count the plaintiff states that on the 15th of May, 1818, it was agreed between the plaintiff and defendant, that the defendant should sell to the plaintiff his stock in the Central Bank of Georgetown, being 7,462 shares, at par, and represented to the plaintiff that the stock was of that value. and that a dividend of four per cent. would be made on the said stock at the next ensuing first Monday of July, and insisted that if he should part with his said stock at par, the plaintiff should advance and pay him so much of the said dividend as had been then earned by the said bank; and the plaintiff confiding in the defendant's representation and believing that the said dividend of four per cent. would be made upon the said stock. did agree to advance the supposed earnings of the said stock, which said supposed earnings, according to a calculation then made by the said parties, amounted to three per cent.; and a memorandum of the said agreement was then and there reduced to writing and signed by the said parties; and that it was further agreed in and by the said writing that the plaintiff should be at liberty to confirm or disannul the said agreement, at any time within —— days from the date of the same; that the plaintiff, confiding in the statements and representations of the defendant as aforesaid, and believing that the said dividend of four per cent. would be made as aforesaid, on the day next following the date of the said agreement, did agree to confirm and ratify the same. and did agree to buy of the defendant his said bank stock, at the par price aforesaid, and did agree to advance to the defendant the supposed profits which the said stock had earned to the time of the said agreement, that is to say, three per cent. upon the amount of the said stock; that the stock was transferred by the defendant to the plaintiff who paid for it at the par price, and did further advance and pay to the defendant the sum of $1,902; be'ng the supposed earnings of the said bank at the time of the said contract; that at the time of the contract the bank had made no profit upon which any dividend could be declared, and that it was not competent for the said bank, on the first Monday of July, then next following. to declare any dividend upon the said stock; of all which premises the defendant had notice; "by means whereof he became liable and bound to refund to the said plaintiff the said sum of money so advanced to him for the said supposed earnings of the said bank, and the said defendant being so

liable, in consideration thereof," promised, &c. The second count was for money had and received.

This cause was first tried at April term, 1821, when a verdict was rendered for the plaintiff, the parol evidence of the written contract having been given without objection. The court granted a new trial which came on in April term, 1822, when the defendant objected to parol evidence of the written contract; and the plaintiff, to lay the ground for admitting it, made affidavit "in relation to the memorandum of agreement between himself and the defendant relative to the stock mentioned in the declaration, that his impression is that he tore up the same, after the transfer of the stock, believing that the statements, upon which the contract had been made, were correct, and that he would have no further use for the paper; he is not certain that he did tear it up, and does not recollect doing so; but such is his impression. If he did not tear it up, it has become lost or mislaid; and that he has searched for it among his papers repeatedly, and cannot find it." The plaintiff served a notice on Mr. D. M. Forrest, the defendant's attorney at law, to produce the defendant's counterpart of the agreement, but he disclaimed any obligation on him to produce it if it was ever in his possession.

The plaintiff then offered parol evidence of the written contract, but THE COURT (MORSELL, Circuit Judge, contrâ) refused to permit it to be given; being of opinion that if the written contract was mislaid only, it was not sufficient ground to admit the secondary evidence, but might be ground for a continuance of the cause to give the plaintiff time to make further search for the paper.

THE COURT (nem. con.) also refused to receive the parol evidence on the ground that it had been, at the former trial, received without objection.

The jury found a verdict for the defendant. The plaintiff took a bill of exceptions, and the judgment was reversed by the supreme court (9 Wheat. [22 U. S.] 483), and the cause was sent back by mandate, directing a venire de novo, and again came to trial the present term, (May 1826,) and the plaintiff offered the following evidence subject to the objections of the defendant to the admissibility of the evidence as it should be delivered: (1) The testimony of William Hebb, who stated that "he found the plaintiff and defendant sitting at the directors' table, and the defendant said to him that he was glad he had returned; that the plaintiff was about to buy out his stock and requested him to take a seat and be an evidence to the contract; upon which the plaintiff asked the defendant what were his terms; and the defendant answered he would take par, with the dividend which should be declared at the next periodical term. which he said he thought would be four per cent.; that the plaintiff then said he supposed he only meant the interest accrued down to that

time; to which the defendant assented. The plaintiff then took his pen and made the calculations and said it amounted to three per cent. on that day. The plaintiff said it was a heavy purchase and if the defendant would allow him a few days to consult his friends he would take it on these terms. The defendant then asked the plaintiff to draw up a memorandum, in writing, of the agreement, which he did. The plaintiff read over the writing hastily in the presence and hearing of the defendant and the witness; the defendant approved of it, and said he would get Mr. Washington to copy it, and each could have one; the defendant brought the original paper back with the copy taken by Mr. Washington; both parties signed each paper, and the witness attested the same as a subscribing witness; each took one." "The witness does not recollect the phraseology of the writing as to the payment of the money, but recollects that it bound the defendant to transfer the stock if plaintiff decided to take it in a certain number of days, which he believes was three or five, but does not recollect which. He believes the paper contained the verbal contract as the parties had made it, as the witness has before stated it. Witness continued a director till after the next dividend day, and no dividend was made." "The witness being asked on his cross-examination, whether the writing which he has mentioned was in the following terms, or terms to this effect, as read from the deposition of Lawrence Washington: 'I bind myself to receive, at any time within three days, three per cent. advance upon my stock in the Central Bank of Georgetown and Washington;' and if not, wherein these terms differ from the writing as recollected by him;" said, in reply, that "the writing, as recollected by him, was the reverse of the terms above propounded, inasmuch as the writing, described by him, bound the defendant to transfer the stock." The witness being further cross-examined, says, "he does not think the writing mentioned the quantity of stock, which had before been ascertained; that he does not recollect whether the written contract expressed that par was to be paid for it, nor that any advance upon the stock was specified in the contract: he does not recollect how it was expressed, but his impression and belief is, that the understanding of the parties was that three per cent, was to be paid upon a contingency that the next dividend amounted to four per cent. and that the written contract was to the same effect."

The plaintiff then offered the evidence of Francis Dodge and William Thompson, who testified that "on the 20th of May, 1818, the defendant transferred to the plaintiff 7,462 shares in the stock of the said Central Bank, which at par amounted to $63,427; and that on the same day the plaintiff paid the defendant $21,029.81, and retired the defendant's stock-notes by substituting the plaintiff's

stock-notes to the amount of $44,300. That on the 26th or 27th of the same month, Francis Dodge succeeded the defendant as president of the said bank, and from that time the defendant took no part in the direction of its affairs; that the then next stated day for making dividends, by the charter, was the first week in July, 1818, and no dividend was then declared on the capital stock of the said bank." "The defendant waived so much of his objection to the said evidence of Dodge and Thompson, as required the production of the books, and other documents, by which the facts, stated by those witnesses, are proved, relying upon the inadmissibility and incompetency of the facts so offered to be proved." And upon the evidence, so offered as aforesaid, the plaintiff claimed to recover, in this action, the advance, so stated to have been paid by him, upon the stock; that is the difference between the par value and the sum paid, equal to $1,902.81, with interest. Whereupon the defendant objected to the admissibility and competency of the said evidence, in the terms so offered as aforesaid, to sustain the first count of the plaintiff's declaration.

But THE COURT (CRANCH, Chief Judge, contrà) decided that the same was admissible and competent to sustain the said count, and the same was given to the jury.

The defendant then objected to the admissibility and competency of the said evidence, to sustain the second count, and prayed the opinion and decision of the court that the said evidence was not admissible and competent to sustain the said second count.

But THE COURT (CRANCH, Chief Judge, contrà) overruled the said objection and prayer, and admitted the said evidence under the second count also.

The plaintiff having given to the jury the evidence so offered by him, and having thereupon rested his case, the defendant, by the consent of the parties, read to the jury the deposition of Mr. Lawrence Washington, the person referred to in the testimony of Mr. Hebb. Whereupon the defendant prayed the court's opinion, and instruction to the jury, as follows: That the evidence so given by the plaintiff as aforesaid, either taken by itself, or in connection with that of the defendant, is not competent and sufficient to be left to the jury, as evidence that the said written contract continued to be executory after the transfer of the stock by the defendant to the plaintiff, and the payment therefor by the plaintiff, as stated in the plaintiff's said evidence; nor that it contained any stipulation or condition that the 3 per cent. advance upon the said stock was paid or agreed to be paid by the plaintiff upon a contingency that the next dividend amounted to 4 per cent., or that the defendant should refund to the plaintiff the 3 per cent. advance upon the par value of the stock, paid by the plaintiff as aforesaid, in the event of there being no dividend declared upon such stock at the then next ensuing regular period for declaring such dividend.

But THE COURT (CRANCH, Chief Judge, contrà) refused to give the said instruction, as prayed; "being of opinion that so much of the said contract as relates to the advance of the 3 per cent. portion of the dividend is executory, in so far as regarded the implied assumpsit of the defendant to refund the said 3 per cent. advance in the event of there being no dividend on the dividend-day."

The plaintiff then prayed the opinion and instruction of the court to the jury, that if from the whole evidence aforesaid, the jury should be of opinion that the defendant in his written contract respecting the stock, did agree to sell his stock at par, and to take the earnings which the stock had made in lieu of the dividend which he stated and represented would be declared at the next dividend-day; and if the jury should be further of opinion that the plaintiff did actually advance to the defendant the amount of the said supposed earnings of the stock, under a belief, created by the defendant, that such dividend would be made, that then the plaintiff would be entitled to recover back the money so paid under such mistaken impression, if the jury should find from the evidence, that there was no such dividend declared, and that the said stock had not, at the time of such contract, earned any such supposed interest or dividend; which instruction,

THE COURT (CRANCH, Chief Judge, contrà) gave as prayed.

Bills of exception were taken; and the verdict being for the plaintiff, the defendant sued out a writ of error, and the supreme court of the United States reversed the judgment, and by mandate ordered a venire de novo. 1 Pet. [26 U. S.] 591.

RIGGS (UNION BANK OF GEORGETOWN v.). See Case No. 14,361.

RIGGS, The MARY E. See Case No. 9,208.

RIGSBY (UNITED STATES v.). See Case No. 16,163.

RIKEMAN (FINCH v.). See Case No. 4,788.